No. 14-1118 - *Hardy County Comm'n v. Elmore*

LOUGHRY, J., concurring, in part, and dissenting, in part:

**FILED**
**June 3, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

When the Hardy County Commission ("Commission") adhered to the law and gave the public the notice required of its intention to consider the purchase of the Baker building and the imposition of a special emergency ambulance service fee ("ambulance fee") at the forthcoming June 24, 2013, and July 15, 2013, public meetings, the citizens of Hardy County appeared and voiced their strong opposition to these matters. As a result, the Commission's initial vote on July 16, 2013, was *against* the purchase of the Baker building and imposition of an ambulance fee. Just a few weeks later, however, the matter was reconsidered on August 2, 2013, *without proper notice,* and the Commission's vote changed *in favor* of purchasing the Baker building and imposing the ambulance fee. Not only do these actions reek of "back-door" politics, but they ineluctably offend the very objectives the Open Governmental Meetings Act (hereinafter sometimes referred to as the "Act")[1] was designed to further and protect. Accordingly, I dissent to the majority's conclusion that the Commission's actions concerning the Baker building purchase and the ambulance fee are exempt from the Act.[2] Not only did the decision to impose the ambulance fee transpire

---

[1]*See* W.Va. Code §§ 6-9A-1 to -12 (2015).

[2]While I agree with the circuit court on the applicability of the Act, I disagree with the circuit court's decision to enjoin the Commission from taking any future action in regard to this matter, its decision to impose personal liability on the individual Commissioners, and its directive to disgorge attorney's fees.

1

during a meeting held in defiance of the Act's notice provisions, but it is my considered opinion that the imposition of the ambulance fee itself was equally unlawful.

It is irrefutable that a lack of transparency in government fuels an attendant lack of trust in government. As the annals of this state's history demonstrate, West Virginia has a sordid political history which understandably informs the current distrust by this state's citizenry and related civic disengagement. *See generally* Allen H. Loughry II, *Don't Buy Another Vote, I Won't Pay for a Landslide, The Sordid and Continuing History of Political Corruption in West Virginia* (McClain Printing Co., 2006). With the enactment of the Open Governmental Proceedings Act in 1975, our state legislature sought to increase public awareness, promote citizen involvement in governmental actions, and retain public control over governmental bodies. *See* W.Va. Code § 6-9A-1 (2015). The intended byproduct of sunshine laws is to "promote public confidence in . . . government, to enable substantive public discussion on important issues, to promote more accurate reporting of meetings, and to decreases corruption in government." Brian J. Caveney, *More Sunshine in the Mountain State: The 1999 Amendments to the West Virginia Open Governmental Proceedings Act and Open Hospital Proceedings Act*, 102 W.Va. L. Rev. 131, 134 (1999). Given the numerous public benefits that result from open proceedings, this Court should necessarily be reluctant to validate governmental acts that glaringly signal the absence of such desired transparency. Moreover, any judicial approval of non-compliant actions constitutes a violation of the

2

framework of the Open Governmental Proceedings Act–the recognition that public bodies "exist for the singular purpose of representing citizens of this State in governmental affairs, . . . [and] it is, therefore, in the best interests of the people of this state for the proceedings of public agencies [to] be conducted openly, with only a few *clearly defined* exceptions." W.Va. Code § 6-9A-1 (emphasis added).

In specifying the exceptions to the general rule of open proceedings, the Legislature has enumerated just twelve types of governmental actions where the public may be excluded and a closed session held. *See* W.Va. Code § 6-9A-4(b) (2015). Because matters pertaining to the Emergency Ambulance Service Act of 1975 ("EASA")[3] are not included within the Act's list of expressly-excepted subjects, the Act's provisions apply, barring a separate legislative enactment that "expressly and specifically" provides otherwise. *See* W.Va. Code § 6-9A-3(a) (2015) (stating that Act's provisions shall apply except "as expressly and specifically otherwise provided by law"). I submit that EASA does not contain the language necessary to provide an "express[] and specific[]" exemption from the Open Governmental Proceedings Act. *Id.*

In deciding that the imposition of a special emergency ambulance service fee was exempt from the Act, the majority looks to the final section of "EASA," which provides

---

[3]*See* W.Va. Code §§ 7-15-1 to -18 (2015).

that "no procedure or proceedings, notices, consents of approvals shall be required in connection therewith except as may be prescribed by this article." W.Va. Code § 7-15-18. From this generalized language, the majority concludes that any act of the Commission related to EASA is wholly exempt from the typically inclusive reach of the Act. *See* W.Va. Code § 6-9A-3(a). In reliance on this non-specific language, the majority concludes that, despite the lack of notice provided to the Hardy County citizens, the imposition of an ambulance fee to facilitate the purchase of a building to house emergency ambulance service vehicles was proper. I recognize how tempting it was for the majority to simply decide that unless EASA requires notice for imposition of an ambulance fee, none is required. This conclusion, however, does not survive scrutiny when viewed against the trenchant language and overarching objectives of the Open Governmental Proceedings Act. The clear mandate of the Act cannot be defeated by such an overly broad attempt to provide unchecked authority with regard to the provision of emergency ambulance services. Rather than a wholesale circumvention of the Act, a more likely scenario is that the "exemption" from notice provision was intended to address the ministerial day-to-day functions of the emergency ambulance authority but *not* its creation or funding. Under the reasoning propounded by the majority, the Legislature decided to provide a statutorily-created, governmental entity with *carte blanche* authority to act clandestinely. I have serious doubts that this is what the Legislature intended.

As the Legislature wisely recognized, "the citizens of this State do not yield their sovereignty to the governmental agencies that serve them" and "do not give their public servants the right to decide what is good for them to know and what is not good for them to know." W.Va. Code § 6-9A-1. Likewise, this Court has observed that the Act and its attendant "declaration of legislative policy"

> generally, implement grand and fundamental provisions in our State Constitution. Those provisions, adopted from Virginia's Declaration of Rights, proclaim the theory of our form of government and embrace Article II, § 2 (powers of government in citizens) and Article III, § 2 (magistrates servants of people) and § 3 (rights reserved to people). Together they dramatically call for a political system in which the people are the sovereigns and those in government are their servants. Naturally, servants should be loathe to exclude their sovereigns from any substantive deliberations. As is obvious from the declaration of policy in W.Va. Code, 6-9A-1, that is precisely the sentiment inspired by the Sunshine Act.

*McComas v. Board of Educ.*, 197 W.Va. 188, 197, 475 S.E.2d 280, 289 (1996) (footnotes omitted). Addressing the critical import of the Open Governmental Proceedings Act, this Court stated: "From the legislative statement of policy and its constitutional underpinnings, it is clear this Court should accord an expansive reading to the Act's provisions to achieve its far-reaching goals. A narrow reading would frustrate the legislative intent and negate the purpose of the statute." *Id.*

In its rush to sanction the Commission's actions, the majority disregards the Act's weighty mandate that "all meetings of any governing body shall be open to the public."

5

W. Va. Code § 6-9A-3(a). Intentionally cautious in creating exemptions to this mandate, the Legislature provided: "Except as *expressly* and *specifically* otherwise provided by law, *whether heretofore or hereinafter enacted*, and except as provided in section four [§ 6-9A-4] of this article *all meetings of any governing body shall be open to the public*." *Id.* (emphasis added). By restricting exemptions to the open proceedings mandate to those that are "expressly and specifically provided by law," reference to the Act itself appears required to all legislation enacted in 1975 and thereafter. Noticeably absent from EASA, specifically section eighteen, is any language that precisely indicates the provisions of the Open Governmental Proceedings Act are not applicable. This is especially telling in view of the fact that the Act and EASA were both enacted in the same legislative session. If the Legislature intended to exempt EASA from the requirements of the Open Governmental Proceedings Act, it stands to reason that, given the contemporaneous passage of the Act with EASA, language expressly providing for such an exemption would have been included as a part of section eighteen. *See* W.Va. Code § 7-15-18; W.Va. Code § 29A-1-4(b), (c) (2015) (specifying specific instances when meetings of agency, board or commission of executive branch of government or of legislative rule-making rule committee "do[ ] not constitute a meeting within the meaning of article nine, chapter six of this code [Open Governmental Proceedings Act]"). In finding that West Virginia Code § 7-15-18 constitutes an exemption to the requirements of the Open Governmental Proceedings Act–a statutory provision that fails to reference the Act either by title or by statutory citation–the majority has rendered

6

meaningless the Act's requirement that an exemption must be "express" and "specific." W.Va. Code § 6-9A-3(a). *See Meadows v. Wal-Mart Stores, Inc.*, 207 W.Va. 203, 214, 530 S.E.2d 676, 687 (1999) ("In parsing the language of a statute for its meaning, we are mindful that 'a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute.'") (internal citation omitted).

Without question, West Virginia Code § 7-15-17 provides the necessary authority for a county commission to impose and collect a "special service fee" for emergency ambulance services. But before such a fee can be imposed, certain prerequisites must exist as a necessary legislative backdrop to the creation of an emergency ambulance service authority. Only where ambulance service is "not otherwise available" does the duty of a county commission arguably even arise to provide such services. *See* W.Va. Code § 7-15-4. Under West Virginia Code § 7-15-4, the duty to act pursuant to EASA is further subject to the county commission's obligation to "make an affirmative determination that there are funds available therefor by the inclusion of a projected expenditure for such purpose in the current levy estimate." *Id.* Of critical import is the statutory requirement that a county commission may not provide emergency ambulance service "beyond a level commensurate with the amount of funds actually available for such purpose." *Id.* Because the record in this case makes clear that Hardy County lacked the necessary funds for purchase of the Baker building and because the issue of whether ambulance services were unavailable is disputed,

7

the authorizing legislation was never invoked. In textbook fashion, this case exemplifies the pivotal need for open government. In seeking to fill the county coffers with the necessary funds to provide emergency ambulance services (in contravention of EASA's authority) and by imposing a fee for such services (without first permitting the citizens of Hardy County notice and opportunity to comment), the objectives of the Open Governmental Proceedings Act were inexorably corrupted.

If the Legislature wants emergency ambulance authorities to operate in such an unfettered and permissibly secretive manner, it need only amend EASA to "expressly and specifically" exempt it from the Open Governmental Proceedings Act. W.Va. Code § 6-9A-3(a). To the extent such an amendment fails to eventualize, it will conclusively demonstrate that the Legislature never intended that a county commission could use EASA to block the sunshine and impose significant financial burdens on a county's citizenry.

Accordingly, I respectfully concur, in part, and dissent, in part.